**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **BRIAN S. ALFORD**, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §    Civil Action No. **3:11-CV-457-L** |
| | § |
| | § |
| **HUNT COUNTY and** | § |
| **SHERIFF RANDY MEEKS**, | § |
| | § |
| | § |
| Defendants. | § |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants Hunt County and Hunt County Sheriff Randy Meeks' Motion

for Summary Judgment, which was filed under seal on July 15, 2011.  After carefully reviewing the

motion, response, briefs, appendices, evidence, record, and applicable law, the court **grants**

Defendants Hunt County and Hunt County Sheriff Randy Meeks' Motion for Summary Judgment

and **dismisses with prejudice** Alford's retaliation claims under Title VII and the Texas

Whistleblower Act ("TWA").

I.      **Factual and Procedural Background**

Plaintiff Brian S. Alford ("Alford"), a former Hunt County deputy sheriff, filed this action

in the 196th District Court of Hunt County, Texas, on February 14, 2011, against Hunt County and

Sheriff Randy Meeks (collectively "Defendants") for retaliation pursuant to Title VII, 42 U.S.C. §

2000 *et seq*., section 21.055 of the Texas Labor Code, and the TWA.[1]  Alford's Original Petition

---

[1] Alford's Original Petition and subsequent amended pleadings do not specifically refer to the TWA but contain sufficient facts to put Defendants on notice that Alford was pursuing a claim for retaliation under the TWA.

**Memorandum Opinion and Order – Page 1**

also contained a section 1981 claim, which he did not pursue in his First Amended Petition (referred to hereafter as "Amended Complaint"), filed on April 22, 2010.

Defendants removed the case to this court on March 4, 2011.  In the Amended Complaint, Alford contends Defendants retaliated against him for reporting or refusing to assist in concealing certain alleged misconduct of fellow police officer Vernon Wright ("Wright") and Sheriff Meeks. Alford contends his employment was terminated on October 19, 2009, and he was otherwise discriminated against because he refused to assist in covering up the alleged sexual misconduct of Wright with female bail bondsman Dana Pennington ("Pennington") and Sheriff Meeks's alleged misuse of county vehicle allowance funds.  Before his employment was terminated, Chief Jailer Karen Dixon ("Dixon") informed Alford about Wright's alleged harassment of Pennington.  On or about August 10, 2009, Alford met with Pennington and advised her of her options for addressing the situation.  Pennington subsequently filed a written complaint with the Hunt County Sheriff's Office ("HCSO").  On September 27, 2009, Alford was read a *Garrity* warning.  Alford contends that he was accused of coercing a citizen [Pennington] into filing a complaint and interfering with the HCSO's investigation regarding Wright's misconduct.  Beginning  on October 6, 2009, Alford contends that Defendants retaliated by changing his shift, removing him from the SWAT team, and not allowing him to assume control of the Sheriff's office, in accordance with normal policy, when both Sheriff Meeks and Undersheriff McKnight were unavailable or out of town.  Alford's employment was also terminated on October 19, 2009, upon completion of the HCSO's investigation conducted by Lieutenant Chad Wilhelm.

Before filing this action, Alford retained counsel and submitted an Intake Questionnaire to the Equal Employment Opportunity Commission ("EEOC") on May 26, 2010, alleging retaliation.

Alford subsequently filed a formal charge with the EEOC.  Alford's Charge of Discrimination is signed October 27, 2010, and is stamped "RECEIVED" on November 9, 2010.  The charge was subsequently notarized on February 20, 2011, by Dixon.

Defendants deny that they retaliated against Alford and moved for summary judgment on Alford's retaliation claim under Title VII and the TWA.[2]  Alford responded, asserting a large number of objections to Defendants' evidence.  Relying on his own affidavit and Defendants' Exhibit Nos. 8 and 11-17, Alford disputed each of the arguments raised by Defendants.

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

_____

[2]In supplemental briefing ordered by the court, Defendants explained that they did not move for summary judgment on Alford's retaliation claim under the Texas Labor Code because Alford's counsel had acknowledged during Alford's deposition that his client was no longer pursuing a claim under the Texas Labor Code.  During a hearing held on October 7, 2011, Alford's counsel confirmed on the record that his client was not pursuing a claim under the Texas Labor Code.  Accordingly, such claim has been withdrawn and is no longer before the court.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

Applying the relevant standard, the court determines that Defendants are entitled to summary judgment on Alford's retaliation claim under Title VII and the TWA even though they failed to meet

their burden of establishing that Alford's claim under the TWA is barred by applicable statute of limitations.

### A.     Retaliation Claim Under Title VII

Defendants contend that they are entitled to summary judgment on Alford's Title VII claim because: (1) Alford failed to timely file a charge with the  EEOC, and the time for filing a charge was not equitably tolled by the submission of his Intake Questionnaire to the EEOC; (2) Alford cannot establish a prima facie case of discrimination, as his allegations of retaliation with regard to Pennington and Sheriff Meeks do not qualify as protected activity under Title VII; and (3) Alford has not come forward with evidence to rebut Defendants' evidence regarding pretext.

Defendants counter that they did not retaliate against Alford.  They assert that his employment was terminated for a number of other reasons: (1) he initiated and conducted an investigation in violation of the HCSO's policies and procedures, which only permit the sheriff or undersheriff to initiate and conduct internal affairs investigations; (2) Alford, Dixon, and another Hunt County employee, Amanda Jackson, continued to work together and push the Pennington complaint, even after a formal internal affairs investigation was commenced and after they had been given a *Garrity* warning and instructed to cease all communications regarding the active investigation; (3) the formal investigation conducted by the HCSO revealed that Alford and the others were sharing internal affairs information with persons outside the HCSO and expressed no concern about going behind the Sheriff's back to conduct their own investigation; and (4) Alford and the others contradicted one another and were not truthful when questioned during the HCSO's investigation.

Alford responds that his charge was timely.  Additionally, he contends that even if his allegations with regard to Sheriff Meeks and Pennington do not support his contention that he engaged in protected activity, his affidavit submitted in response to Defendants' motion contains information regarding Wright's alleged sexual misconduct with female Hunt County employee, Carrie Gilbreath ("Gilbreath"). During the hearing on Defendants' summary judgment motion, Alford requested that he be allowed to amend his pleadings again, if necessary, to include the allegations regarding Gilbreath.

Alternatively, or in addition, Alford argued during the hearing that although Pennington is not technically employed by Defendants, she should be considered an agent or *de facto* employee for purposes of Title VII.  In support of this argument, Alford contended that Hunt County does not have a bail bonds board and the activity of Pennington and other bail bondsmen is therefore controlled by the HCSO and Sheriff Meeks.  Alford also argued that the HCSO had a close relationship with the bail bondsmen.  Alford further contends in response to Defendants' motion that the sequence of events that occurred prior to his termination and his record of no prior reprimands are evidence of pretext.

### 1.      Prima Facie Case of Retaliation - Protected Activity

Title VII  also makes it unlawful for employers to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by [Title VII], or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).  To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse

action.  *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  Plaintiff's ultimate burden is to show that he would not have suffered the adverse employment action "but for" his engagement in the identified protected activity.  *See Septimus v. Univiversity of Houston*, 399 F.3d 601, 608 n.15 (5th Cir. 2005) (citations omitted).  An employee engages in protected activity if he  (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing.  *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

As Defendants correctly note and Alford conceded at the hearing on Defendants' motion, Alford's voicing concerns about Sheriff Meeks's alleged misuse of funds is not protected activity under Title VII.  Speaking out on this matter may give rise to a claim under the First Amendment to the United States Constitution or the TWA; however, it is not grounds for a retaliation claim under Title VII, as such conduct is not unlawful or prohibited by Title VII.  Accordingly, it cannot serve as a basis for a claim of retaliation under Title VII.

Likewise, the allegation and evidence that Alford refused to cover up Wright's sexual misconduct with bail bondsman Pennington fail to establish that Alford engaged in protected activity.  In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  548 U.S. 53, 64 (2006).  Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially

adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted).  In evaluating whether actions are "materially adverse," the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.*

Approximately four and one-half years after the *Burlington* decision, the Supreme Court held that the firing of an employee as retaliation against the employee's fiancée who was also employed by the employer, if proved, constituted unlawful retaliation under Title VII. *Thompson v. North American Stainless, LP*, 131 S. Ct. 863, 867 (2011).  Thompson's fiancée filed a charge of sex discrimination with the EEOC.  After North American Stainless received notice of the charge, it fired Thompson three weeks later, and Thompson subsequently filed a charge with the EEOC.  In its ruling, the Court stated, "We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id*. at 868.  Thus, the Court held that the conduct, if proved, violated Title VII because of the close, personal relationship between the two employees; however, it declined to establish a bright-line rule as to when a third-party reprisal would violate Title VII. *Id.*

The Court then applied the "zone of interests" test to determine whether Thompson could sue under Title VII.  In applying this test, the Court stated:

> Thompson is not an accidental victim of the retaliation—collateral damage, so to speak, of the employer's unlawful act. To the contrary, injuring him was the employer's intended means of harming [his fiancée].  Hurting him was the unlawful act by which the employer punished her. In those circumstances, we think Thompson [is] well

> within the zone of interests sought to be protected by Title VII.  He
> is a person aggrieved with standing to sue.

*Id.* at 870.  Nothing in the record establishes that Pennington was an employee of Hunt County or Sheriff Meeks at the time of the alleged misconduct, or that a close, personal relationship existed between Alford and Pennington that would bring it within the ambit of Title VII's antiretaliation provision.  Alford's affidavit establishes he met Pennington for the first time when he advised her of her options, and, because of the sexual harassment nature of her allegations, Alford insisted that Dixon go with him.  To hold that Alford's complaint about Wright's alleged sexual misconduct involving Pennington constitutes protected activity impermissibly expands the Court's holding in *Thompson* and the plain language of Title VII regarding retaliation.[3]  Accordingly, the conduct of which Alford complains does not constitute unlawful retaliation.  Moreover, Alford is not entitled to bring a Title VII retaliation lawsuit based on the conduct because he is not within the zone of interests to be protected by Title VII.

Finally, because the issue with regard to Gilbreath was raised for the *first* time by Alford in response to Defendants' summary judgment motion, the court declines to consider it at this late stage.  Alford's Intake Questionnaire demonstrates that he was represented by counsel and aware of the matters pertaining to Gilbreath since at least May 26, 2010, but did not include any such allegations in his Original Petition or the Amended Complaint, which was filed on April 22, 2011, before Defendants moved for summary judgment.  At no time prior to the hearing on October 7, 2011, did Alford seek leave to include such allegations.  Moreover, no adequate explanation has

---

[3]From what the court can ascertain, Plaintiff's counsel conceded this argument at the hearing held on October 7, 2011.

**Memorandum Opinion and Order – Page 9**

been provided to the court for the failure to seek leave to amend, and allowing such an amendment at this stage would be unfair to Defendants and unnecessarily delay the resolution of this case.

### 2. Timeliness of Alford's EEOC Charge of Discrimination

Even assuming Alford's conduct with regard to Sheriff Meeks and Pennington qualified as protected activity under Title VII, the court alternatively determines that summary judgment is proper because Alford failed to timely file a charge with the EEOC. To bring a retaliation claim under Title VII of the Civil Rights Act of 1964, a plaintiff must file a charge of unlawful employment discrimination with the EEOC within 300 days after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). It is undisputed that Alford's employment was terminated on October 19, 2009, and all the conduct of which Alford complains occurred between October 6, 2009, and the date he was fired. It is also undisputed that Alford did not file a charge of discrimination based on retaliation with the EEOC before October 27, 2010, which was 373 days after the alleged retaliation by Defendants. Viewing the evidence in the light most favorable to Alford, the court determines that his retaliation claim against Defendants is untimely.

### 3. Doctrine of Equitable Tolling

Courts may consider whether it would be proper to apply equitable tolling in determining whether a charge was timely filed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Such doctrine, however, is to be applied "sparingly." *Id.* at 113-14. Three possible bases for tolling have been recognized: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of his rights. *Blumberg v. HCA Mgt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988).

**Memorandum Opinion and Order – Page 10**

Although Alford does not specifically argue that the time for filing his EEOC charge was equitably tolled, and he did not directly respond to Defendants' tolling argument. He, nevertheless, appears to contend that his EEOC charge was timely filed based on his EEOC Intake Questionnaire and the subsequent delay by the EEOC in not issuing a right-to-sue letter until December 8, 2010. Amended Complaint at 2 ("A charge of discrimination was signed on May 24, 2010 and stamped as filed with the Equal Opportunity Commission, on May 26, 2010 . . . .").

Alford's EEOC Intake Questionnaire clearly states on the top of the first page: "**REMEMBER**, a charge of employment discrimination must be filed within the time limits imposted by law, generally within 180 days or in some places 300 days of the alleged discrimination." Defs.' Exh. 8 (emphasis in original). Alford indicated in the questionnaire that he had not previously filed a "charge" in this matter with the EEOC or another agency. Alford was therefore aware of the difference between an intake questionnaire and a charge. Alford also indicated in the questionnaire that he was represented by counsel, the same law firm that is representing him in this case. Although equitable tolling may apply in certain limited circumstances when the EEOC disseminated misinformation and a plaintiff fails to timely file an EEOC charge, courts considering the issue have held that the doctrine does not apply when a plaintiff is represented by counsel. *See Dickson v. American Red Cross Nat'l Headquarters*, No. 3:95-CV-2391-P, 1997 WL 118415, at *8  (N.D. Tex. March 10, 1997) (citing cases). More importantly, Alford's deposition testimony demonstrates that the delay was attributable to his running for justice of the peace, which consumed a lot of his time. He further testified that he would not have pursued the lawsuit if he had won the election.

Thus, even assuming the EEOC delayed in issuing a right-to- sue letter, this does not explain or excuse Alford's failure to timely file a formal charge, and Alford does not claim he was misled or prevented in any way from timely filing a charge. *See, e.g., Nadesan v. Texas Oncology PA*, No. 2:10-CV-239-J, 2011 WL 147570, at *6-7 (N.D. Tex. Jan. 18, 2011) (holding that the plaintiff failed to meet her burden of proving that equitable tolling doctrine applied, even though she did not receive a formal charge from the EEOC until 195 days after she submitted her intake questionnaire and after the 300-day filing deadline, as nothing prevented her from completing a formal charge and submitting it to the EEOC, she was also represented by counsel, and she did not attempt to contact the EEOC after submitting her questionnaire to check on the status of her case). Accordingly, the doctrine of equitable tolling does not apply under the circumstances of this case. Defendants are therefore entitled to summary judgment on Alford's retaliation claim under Title VII, and the court need not address Defendants' arguments regarding pretext or Hunt County's status as an employer under Title VII.

**B.      Retaliation Claim Under TWA**

Defendants also moved for summary judgment on Alford's retaliation claim under the TWA. Defendants contend Alford failed to timely file suit, and even if timely, his retaliation claim still fails. The court addresses the timeliness of Alford's lawsuit first.

**1.      Timeliness of TWA Claim**

Defendants contend that Alford's TWA claim is untimely because he failed to file suit within 90 days after the alleged retaliation. Alford responds that his claim was timely because Defendants' grievance/appeal policy is unclear and he brought this action within 30 days of receiving a right-to-sue letter from the EEOC.

**Memorandum Opinion and Order – Page 12**

The TWA requires that retaliation suits be filed not later than 90 days after the alleged violation of the Act, unless a grievance or appeal is initiated pursuant to the employer's procedures. Tex. Gov. Code Ann. §§ 554.005, 554.006 (West 2004). Before filing suit, an employee must "initiate action under the grievance or appeal procedures" of the employer within 90 days after the alleged violation occurred or was discovered by the employee through reasonable diligence. § 554.006(a)-(b). Section 554.006 does not require an employee to exhaust the employer's grievance or appeal procedures, but the grievance or appeal process must be timely initiated before filing suit. *University of Texas Med. Branch v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005). The requirement that a grievance or appeal be initiated is a jurisdictional prerequisite to filing suit. *University of Houston v. Barth*, 178 S.W.3d 157, 160-61 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

"[T]he Act does not dictate what actions are required to 'initiate' the appeals procedure." *Moore v. University of Houston-Clear Lake*, 165 S.W.3d 97, 102 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see City of Austin v. Ender*, 30 S.W.3d 590, 594 (Tex. App.— Austin 2000, no pet.). Additionally, the statute does not require the use of particular words or require the employee to state that his grievance or appeal is based on the TWA. *Moore*, 165 S.W.3d at 102; *Ender*, 30 S.W.3d at 594. What is required is that the employer be given reasonable notice, that is, fair notice "of the employee's intent to appeal a disciplinary decision and notice of which decision . . . the employee intends to appeal." *Tarrant Cnty. v. McQuary*, 310 S.W.3d 170, 177 (Tex. App.— Fort Worth 2010, pet. denied). If a final decision is not rendered by the employer within 61 days, an employee may either terminate the proceedings and file suit within the time remaining under section 554.005 or exhaust the procedure and sue within 30 days after the employer's procedures are exhausted. § 554.006(d).

Defendants correctly note, and Alford does not dispute, that he did not file suit within 90 days of being fired or suffering other retaliation as required by section 554.005. Defendants, however, fail to address the applicability of section 554.006, which must be taken into account in determining the timeliness of Alford's claim. According to evidence submitted by Defendants, the HCSO has an internal affairs investigation procedure to address alleged policy violations by or against HCSO employees. According to the affidavits of both Sheriff Meeks and Alford, only the Hunt County Sheriff or Undersheriff can initiate an internal affairs investigation. It is unclear, though, whether this procedure also applies to employee grievances or appeals of retaliation suffered for reporting alleged violations of law.

According to an October 26, 2009 letter from Alford to Sheriff Meeks, which both parties rely on, Alford attempted but was unable to locate any HCSO grievance or appeal policy. Alford then contacted Human Resource Director Sandy Orange, who advised him that any appeal of his employment termination must be made first to Sheriff Meeks within five business days from the date of the termination and subsequent appeal could be made to the Commissioner's Court. In the letter, Alford states to Sheriff Meeks: "Please accept this letter as my request to appeal my termination . . . I will also be delivering a copy of this letter to Sandy Orange as a request to appeal my termination to the Hunt County Commissioner's Court." Defs.' Exh. 34. Although Defendants appear to dispute in their motion that Alford did not follow the proper procedure for appealing his termination, both parties acknowledged during the hearing on Defendants' summary judgment motion that Alford did in fact attempt to appeal the termination of his employment via the October 26, 2009 letter. The court therefore determines that Alford timely initiated an appeal of his termination under section 554.006 of the TWA, and his October 26, 2009 letter to Sheriff Meeks

provided Defendants with sufficient notice of his intent to appeal that decision.  The court therefore has jurisdiction over Alford's TWA claim and considers whether Alford filed this action within the time required by sections 554.005 and 554.006 of the statute.

The parties acknowledged during the October 7, 2011 hearing that a meeting took place between Alford and the HCSO on or about November 2009 to discuss Alford's appeal.  According to Defendants, Alford was offered his job back at this meeting.[4]  The parties disagree, however, what was discussed at this meeting and whether this meeting was the final step in the HCSO process with regard to Alford's appeal such that Alford was required to file suit within 30 days after the meeting.

The court notes that, without more, Alford's contention and evidence that he filed suit within 30 days of receiving a right-to-sue from the EEOC do not establish that he filed suit within the time required under the TWA.  This is because there is no requirement under the TWA that an employee exhaust the EEOC's administrative processes before filing suit, and arguments similar to the one made by Alford have been rejected by Texas courts.  *See Turner v. Richardson Indep. Sch. Dist.*, 885 S.W.2d 553, 560-62 (Tex. App.—Dallas, 1994, pet. denied) (holding that the "purposes, rights protected, and remedies under [the TWA and the Commission on Human Rights Act] are different, and as a result, a plaintiff "must comply with each statute's limitations provisions or elect his remedy" if he has a cause of action under each statute); *Jackson v. University of Texas Health Sci. Ctr. Police Dep't*, No. 04-03-00553-CV, 2004 WL 572330, at *3 (Tex. App.—San Antonio March 24, 2004, no pet.) (rejecting argument that limitations period under the TWA ran from the date the plaintiff received his EEOC right-to-sue letter and holding that, similar to the Texas Commission on Human Rights Act, the TWA has limitations and procedures that must be honored separately

---

[4]Evidence regarding this meeting is not before the court.

**Memorandum Opinion and Order – Page 15**

from any EEOC procedures, and because the plaintiff did not file his TWA claim within the limitations period prescribed by the TWA, summary judgment dismissing his claim was proper).

Defendants, however, have the burden of establishing their statute of limitations defense and "must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant [summary] judgment in [their] favor." *Chaplin v. NationsCredit Corp*., 307 F.3d 368, 372 (5th Cir. 2002) (citation omitted). Since Alford contends that he elected to exhaust the HCSO's procedures for appealing his termination, Defendants had the burden of establishing that Alford failed to timely file suit after the appeal process was exhausted. Defendants argued during the October 7, 2011 hearing that the Alford's appeal was final in November 2009 as a result of the meeting that occurred, and Alford's deadline for filing suit should be calculated from this date. Evidence in this regard, however, was not presented by either of the parties in conjunction with their summary judgment briefing. Accordingly, the court concludes that Defendants' failed to meet their burden of establishing that Alford's claim under the TWA was not timely filed.

**2.      Summary Judgment Evidence of Whistleblower Claim**

The court next considers Defendants' contention that Alford has failed to raise any genuine disputed fact issues to survive summary judgment on his retaliation claim under the TWA.

**a.      Applicable Law**

The TWA prohibits a government employer from taking an adverse employment action against an employee who reports the employer's violation of the law. *See* Tex. Gov't Code Ann. § 554.002 (West 2004). Section 554.002 of the TWA specifically provides:

> (a) A state or local governmental entity may not suspend or terminate the
> employment of, or take other adverse personnel action against, a public employee

who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

*Id.* Under section 554.002(a), "good faith" means "that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996). Whether the employee believed that the conduct reported violated the law is based on the employee's subjective belief that he was reporting an actual violation of the law. *Id.* at 784-85; *City of Houston v. Levingston*, 221 S.W.3d 204, 218–219 (Tex. App.—Houston [1st Dist.] 2006, no pet.). An objective standard, however, is applied to determine if the employee's belief was reasonable. Under this test, the TWA only protects a claimant if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of the law. *Id.* at 784–85; *Levingston*, 221 S.W.3d at 218–219. Similarly, under section 554.002(b), "good faith" means that (1) the employee subjectively believed the governmental entity was authorized to regulate under or enforce the law alleged to be violated in the report, or investigate or prosecute a violation of criminal law; and (2) the employee's belief was objectively reasonable in light of the employee's training and experience. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320-21 (Tex. 2002); *Levingston*, 221 S.W.3d at 218.

Although not specifically addressed in the statute, "the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995). The employee generally bears the burden of proving causation, but if the report is made within 90 days of the adverse employment action, the adverse action "is presumed, subject to rebuttal, to be because the employee made the report." § 554.004(a).

Here, the parties do not dispute that Alford was a public employee when he reported the alleged violation of law. Instead, the parties dispute whether Alford reported a violation of the law while still employed, made the report to the proper agency, and suffered retaliation as a result. In his response, Alford relies only on his reporting of Sheriff Meeks's alleged misuse of vehicle allowance funds and reimbursement of fuel receipts. Alford contends he made "multiple reports" to the HCSO and was fired as a result. Alford further contends that the HCSO is an appropriate law enforcement authority. Alford does not point to any evidence in response to Defendants' motion but, as previously noted, he submitted an affidavit in support of his response.

**b.     Good Faith Reporting of Violation of the Law**

Defendants contend that Alford's TWA claim is based on what he perceived to be misuse of the Sheriff's car allowance, and that no one ever told him it was a crime.[5] Alford does not state in his pleadings or in response to Defendants' motion what specific law he believes was violated by Sheriff Meeks' conduct. He does state in his affidavit, though, that he "approached Randy [Sheriff Meeks]

_____

[5]Defendants do not specifically challenge whether Alford, in good faith, reported "a violation of law," that is, whether Sheriff Meeks's alleged misuse of funds constituted a violation of the law. Thus, the court makes no comment on whether Alford's allegations regarding the alleged misconduct of Sheriff Meeks actually support his claim that Defendants engaged in criminal conduct.

**Memorandum Opinion and Order – Page 18**

in his office and told him my opinion that he was violating the law by taking the allowance and driving the patrol car and getting reimbursed for the fuel he put in the patrol car." Alford Affidavit, 3. Alford's deposition testimony, submitted and relied on by Defendants, further demonstrates that he believed what Sheriff Meeks was doing was a misuse of county or government property and a crime under Texas law. Theft or misappropriation of property is unlawful under section 31.03 of the Texas Penal Code. Tex. Penal Code Ann. § 31.03 (West 2005 & Supp. 2008). It is also a violation of the Texas Theft Liability Act under section 134.003 of the Texas Civil Practice & Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 134.003 (West 2005). Accordingly, the court concludes that Alford's allegation and the evidence regarding Sheriff Meeks's alleged misuse of funds satisfy the requirement that a good faith report be made by an employee of a violation of law by the employing governmental entity.

### c.      Appropriate Law Enforcement Authority

Defendants contend that Alford did not report the misuse of funds by Sheriff Meeks to any outside law enforcement office while he was employed, and his reporting this to the FBI after he was fired cannot support a claim under the TWA. Again, Alford does not point to any evidence but does respond that he reported the issue to the HCSO or Sheriff Meeks. Alford's response does not explain why the HCSO or Sheriff Meeks has authority to regulate, enforce, investigate, or prosecute the law allegedly violated as a result of Sheriff Meeks's use of vehicle funds.

As previously noted, Alford's allegations regarding Sheriff Meeks's misuse of government funds is a violation of Texas criminal law. Thus, while the HCSO would not be the appropriate governmental entity with authority to address a violation of Texas civil law, the court concludes that it would have authority to enforce and investigate a violation of Texas criminal law in Hunt County.

**Memorandum Opinion and Order – Page 19**

*See Robertson Cnty. v. Wymola*, 17 S.W.3d 334, 341 (Tex. App.—Austin 2000, pet. denied) (holding that county sheriff office was an appropriate law enforcement agency with regard to sheriff's alleged violation of the Texas Penal Code because "[t]he Sheriff's Department . . . is a part of the executive branch and is charged with investigating and enforcing the laws of the State.").  Accordingly, the HCSO was an appropriate law enforcement authority, and it is undisputed that Alford made the report to Sheriff Meeks and Undersheriff Joe Knight.[6]

---

[6]Although the Texas Supreme Court in *Needham* held that section 554.002(b)'s "appropriate law enforcement authority" definition does not include an employer's power to internally discipline its own employees for an alleged violation, *Needham*, 82 S.W.3d at 322-22, the record contains evidence that Alford was instructed by HCSO to first report misconduct by employees to the HCSO sheriff or undersheriff, and there is evidence he followed that procedure with regard to Sheriff Meeks's alleged misuse of funds. The court therefore concludes that this evidence supports Alford's good faith belief that the HCSO was an appropriate law enforcement authority with regard to the alleged criminal misconduct of Sheriff Meeks.  For this reason and also because the court concludes that the HCSO has authority to enforce Texas *criminal law*, the facts of this case are distinguishable from those in *Needham*.  *See id; see also Moreno v. Texas A & M University-Kingsville*, 339 S.W.3d 902, 912-13 (Tex. App.—Corpus Christi 2011, pet. filed) (concluding that fact issue existed as to whether university employee had reasonable belief that the university president was an appropriate law enforcement authority to report violation of law by her supervisor because evidence established that employee's belief was based on the assumption that president could actually enforce compliance with section the Texas Education Code, not merely internally discipline supervisor); *Texas Dep't of Human Servs. v. Okoli*, 317 S.W.3d 800, 811 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (holding that whistleblower produced sufficient evidence of his good faith belief by citing to an internal policy requiring him to report misconduct "to his supervisor and then up his chain of command" and noting that an employee is not automatically disqualified from protection under the TWA merely because he makes his report to a superior or because the reported conduct "might also provide a basis for internal employee discipline"); *University of Texas Southwest Med. Ctr. v. Gentilello*, 317 S.W.3d 865, 871 (Tex. App.—Dallas 2010, pet. filed) (holding that whistleblower produced sufficient evidence of good faith by reporting Medicaid and Medicare violations to his supervisor who set policies and had power to investigate violations); *Wymola*, 17 S.W.3d at 340-41 (concluding that plain meaning of "authority" indicates that the court should look at the entity that received the report, rather than the specific individual to whom the report was made, in determining whether a report was made to an appropriate law enforcement authority). *But see County of Bexar v. Steward*, 139 S.W.3d 354, 361-62 (Tex. App.—San Antonio 2004, no pet.) (distinguishing *Wymola* on the grounds that it involved a reporting to a supervisor of a violation of law by another employee and holding that an experienced sheriff's deputy who complains in a personal grievance to his direct supervisor, who is a law enforcement official, about actions taken by his direct supervisor has not in good faith reported a violation of the law to an appropriate law enforcement authority).

**Memorandum Opinion and Order – Page 20**

**d.        Causal Connection Between Reporting and Retaliation**

Defendants contend that Alford has failed to come forward with evidence that the retaliation he allegedly suffered was caused by his reporting a violation of law.[7]  Defendants presented evidence to establish Alford, along with Dixon and Jackson, were terminated as a result of their role in Pennington's sexual harassment complaint against Wright and misconduct with regard to the HCSO's investigation.   For support, Defendants presented the affidavits of Sheriff Meeks, Undersheriff Knight, and Lieutenant Wilhelm; deposition transcripts of various witnesses, including Alford; and a number of other documents related to the HCSO's internal investigation into Alford's, Dixon's, and Jackson's role in the Pennington complaint and their alleged misconduct in relation to the investigation.  Other than asserting that he made "multiple reports" regarding Sheriff Meeks's misuse of funds, Alford does not specifically respond to Defendants' contention in this regard or refer to any evidence.  Instead, Alford only objected to Defendants' evidence.

According to his affidavit, Alford only approached Sheriff Meeks one time about this issue shortly after Sheriff Meeks took office in January 2009.  Alford also testified in his deposition that he also told Undersheriff Knight about Sheriff Meeks's misuse of funds.  Alford admits, however, that he suffered no retaliation at the hands of Defendants prior to October 6, 2009.  Alford also testified that Sheriff Meeks stopped using the vehicle allowance after Alford spoke to him.

---

[7]Defendants also argue that they are entitled to summary judgment because Alford cannot prove his reporting of Sheriff Meeks's misuse of county funds was the "sole reason" for the alleged retaliation.  Defs.' Brief in Support of Motion for Summary Judgment 38-39.  This, however, appears to be a typographical error, because Defendants cite to applicable law to the contrary and acknowledge Alford is not required to prove, under Texas law, that his reporting of a violation of law was the sole reason for the alleged retaliation. The court therefore does not address this issue other than to note the discrepancy.

Thus, other than Alford's contention that he reported Sheriff Meeks's misuse of funds and was subsequently retaliated against nine or ten months later, there is no evidence these events are causally related.  Alford states in his affidavit that "his actions in trying to curb the inappropriate and illegal activity by Sheriff Meeks contributed to my being fired."  Alford Affidavit 7-8.  This is nothing more than a conclusory statement based on a subjective belief without supporting evidence. Conclusory statements and unsupported subjective beliefs, however, are not sufficient to raise a fact issue regarding the reasoning behind Defendants' alleged retaliatory conduct.  *See Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994) (per curiam).  Adverse action taken by an employer against an employee within 90 days of a reported violation of the law by the employee is presumed to be causally related to the making of the report.  § 554.004(a).  In this instance, however, the alleged retaliation by Defendants occurred nine to ten months after Alford reported Sheriff Meeks's alleged misuse of funds.  Such passage of time militates against a finding that Alford's on termination on October 19, 2009, is causally related to his reporting Sheriff Meeks's alleged misuse of funds.

Moreover, the statement prepared by Alford and attached to his EEOC Intake Questionnaire undermines his assertion in this regard.  Like his affidavit, Alford's statement to the EEOC focuses almost exclusively on Wright's alleged sexual misconduct and Alford's reporting of the alleged misconduct shortly before he was fired.  Additionally, Alford states in his Intake Questionnaire, "I truly believe that after looking back on everything that I was terminated because Sheriff Meeks believes that I was not being loyal to him because I would not cover up the sexual misconduct by Vernon Wright.  I fill [sic] that I was terminated because I spoke to a victim of sexual harassment and advised her of her options."  Defs.' App. 236.  Accordingly, viewing the evidence in the light

**Memorandum Opinion and Order – Page 22**

most favorable to Alford, the court concludes that he failed to produce controverting evidence to raise a genuine dispute of material fact on this element of his retaliation claim under the TWA.

## IV.    Plaintiff's Objections to Defendants' Evidence

Alford objected to essentially all of Defendants' evidence, except the following: Defendants' Exhibits 4-7 (deposition testimony of Alford, Jackson, Dixon, and Debbie Thomas); Defendants' Exhibits 8 and 10-16 (EEOC documents and correspondence generated by Alford or the EEOC); Defendants' Exhibit 9 (Sheriff Meeks's September 21, 2009 letter to the file); and  Defendants' Exhibits 33-34 (TCLEOSE Separation of Licensee Notice and Alford's October 26, 2009 letter to Sheriff Meeks appealing his termination).  Most of Alford's objections are global and do not specify, for example, the parts of Defendants' affidavits that constitute hearsay.  Alford's objections are also confusing in that he states in one part of his response that he has "No Objection" to the deposition testimony of Jackson, Dixon, and Debbie Thomas; yet he also takes issue with portions of these persons' deposition testimony in another section of his response.  In any event, the court only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the summary judgment standard herein enunciated.  As the court relied only on admissible evidence, it **overrules** Alford's objections as **moot**.

## V.    Conclusion

For the reasons herein stated, the court determines that no genuine dispute of material fact exists regarding Plaintiff's retaliation claim under Title VII or the TWA.  Accordingly**,** Defendants Hunt County and Hunt County Sheriff Randy Meeks' Motion for Summary Judgment is **granted,** and Alford's claims are **dismissed with prejudice**.  The court, as required by Rule 58 of the Federal Rules of Civil Procedure, will issue judgment by separate order.

**Memorandum Opinion and Order – Page 23**

**It is so ordered** this 21st day of October, 2011.

Sam A. Lindsay
United States District Judge